IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | HON. JEROME B. SIMANDLE |
| v. | Criminal No. 05-407 (JBS) |
| ROBERT G. PELLE, | **OPINION** |
| Defendant. |  |

APPEARANCES:

Christopher J. Christie
United States Attorney
     By:  Philip James Degnan
          Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
970 Broad Street
Room 700
Newark, NJ 07102
     Attorney for the United States of America

Robert N. Agre, Esq.
LAW OFFICES OF ROBERT N. AGRE
4 Kings Highway East
Haddonfield, NJ 08033
     Attorney for Defendant Robert G. Pelle

**SIMANDLE**, U.S. District Judge:

There are two issues presented by this motion to suppress evidence gathered from the search of Defendant's computer hard drive: (1) whether Defendant, in consenting to a search by an investigator of a local prosecutor's office, thereby also consented to the search conducted by agents from the Department of Homeland Security, Immigration and Customs Enforcement; and (2) if Defendant did give such authority to search, did he at some time prior unequivocally withdraw his consent by not

arranging to be personally present during the search.  For the reasons explained below, the Court finds that Defendant did authorize the search of his computer, and that he did not withdraw that consent prior to the search.  The motion will be denied.

**I.    BACKGROUND**

On March 23, 2004, members of the Camden County Prosecutor's Office met with Defendant Robert G. Pelle to investigate his alleged involvement with an organization and web site called "BoyLoversUnited."  At that meeting, Defendant was asked to, and did, execute the following consent to search form:

> I, __Robert Pelle__ have been informed that I have a constitutional right to refuse to allow law enforcement officers to search my property or property over which I exercise control without a search warrant; that I have a right to refuse to consent to such a search; that the law enforcement officers would respect my refusal to consent to such a search; and that anything uncovered by the search could be used in evidence against me or another party.
>
> I hereby authorize __Inv. Amy Jewusiak__ of the Camden County Prosecutor's Office, Camden, New Jersey to conduct a complete search of __[hard drive]__ and to seize therefrom any materials which, in their opinion, may be of evidential value to their investigation.
>
> This consent to search/seize is being given by me to the above named individual(s) voluntarily and without threats or promises of any kind.[1]

---

[1] Five minutes prior, Pelle executed an identical consent to search form purportedly authorizing the search of his residence at 64 South Cedar Avenue, Bellmawr, New Jersey.  Defendant only seeks to suppress the evidence seized from the computer hard drive.  (Def. Br. at 9.)

(Def. Ex. B.)  Only the name of Investigator Amy Jewusiak of the
Camden County Prosecutor's Office was included in the space
provided for the names of those authorized to conduct the
search.[2]

On March 24, 2004, the day after Pelle executed the consent
to search form, Investigator Jewusiak learned from the New Jersey
State Police that they could examine the computer by consent, but
would want Pelle present due to their own internal policy.
Jewusiak contacted Defendant by telephone to inform him that
internal operating procedures of the State Police required that
he be present during the search of his computer.  According to
Investigator Jewusiak (Pelle did not testify at the suppression
hearing), Pelle responded that he would contact his attorney to
make arrangements to be present for the search, and that he would
then "get back to her."  By March 26, 2004, Defendant had not
contacted Investigator Jewusiak.  On that date, Jewusiak again
contacted Pelle about being present at the search, and, once
again, Pelle told her that he would contact his attorney and make
the appropriate arrangements.

Although Jewusiak had seized Pelle's computer, Pelle never
asked for its return.  Mr. Pelle never did contact Investigator
Jewusiak again.  About six months later, in September, 2004, the

---

[2] The Court notes that Ms. Jewusiak also informed Defendant,
prior to his executing the consent form, that the search would
require the assistance of a computer expert.

3

Camden County Prosecutor's Office delivered the computer to the Federal Customs Service's office, and the search of his computer hard drive was conducted by agents from the Department of Homeland Security, Immigration and Customs Enforcement, who then seized evidence related to the charged crimes.

On May 18, 2005, a Newark, New Jersey Grand Jury returned a three-count Indictment against Defendant Pelle charging him with one count of receiving and distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B); one count of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B); and one count of knowingly and willfully transporting a minor in interstate commerce with the intent that the minor engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a) and 2.

On October 7, 2005, Defendant moved through counsel to suppress evidence seized from the search of his computer.  On December 13, 2005, this Court held a suppression hearing and heard testimony from Investigator Jewusiak.

## II.  DISCUSSION

In this motion to suppress, Defendant Pelle first argues that the consent to search form authorized only Investigator Jewusiak, and no one else, to search his computer.[3] Accordingly,

---

[3] Defendant does not challenge the voluntariness of his consent.  Rather, his argument is limited to the scope of the consent actually given.

he contends that the search conducted by the Department of Homeland Security was invalid.  Second, Defendant argues that even if the scope of his consent did encompass a search by agents from the Department of Homeland Security, he unequivocally withdrew that consent prior to the search.[4] For reasons now explained, both arguments lack merit.

    A.   <u>Consent</u>

As already noted, on the consent to search form executed by Defendant, only the name of Investigator Jewusiak was included in the space provided for the names of those authorized to conduct the search.  (Def. Ex. B.)  Defendant maintains that the absence of all other names in that space acts to limit the scope of his consent, thereby requiring the suppression of all evidence seized by anyone other than Investigator Jewusiak.  Defendant's technical argument finds no support in the language of the Fourth Amendment, nor in the relevant case law.  To the contrary, cases from a number of circuits support a holding that the consent lawfully obtained from Defendant to search his property acts to negate any expectation of privacy by Defendant in that property.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against all unreasonable searches and seizures, shall not be violated, and no

---

[4] This argument was raised for the first time by Defendant at oral argument.  Both sides subsequently submitted supplemental briefs on this issue, which the Court has considered.

> Warrants shall issue, but upon probable cause,
> supported by Oath or affirmation, and particularly
> describing the place to be searched, and the persons or
> things to be seized.

U.S. Const. amend. IV.  "[O]ne of the specifically established
exceptions to the requirements of both a warrant and probable
cause is a search that is conducted pursuant to consent."
Scneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).  The
Government has the burden of demonstrating the scope and the
voluntariness of the consent.[5] Bumper v. North Carolina, 391 U.S.
543, 548 (1968).  "A suspect may of course delimit as he chooses
the scope of the search to which he consents." Florida v.
Jimeno, 500 U.S. 248, 252 (1973) (finding consent to search car
implies consent to search containers found inside car that could
reasonably contain the object of the search).  The issue here is
whether the language of the consent to search form executed by
Defendant acts as such a limitation.  For the following reasons,
it does not.

First, factually, Mr. Pelle knew that Investigator Jewusiak
would not be the person examining the hard drive, because she
explained to him she was not a computer expert and that she would
take it to someone who was an expert, according to her testimony

---

[5] The voluntariness of consent is measure by analyzing all
the circumstances of an individual's consent.  Scneckloth, 412
U.S. at 232-33.  As already noted, Defendant does not challenge
the voluntariness of his consent, and this Court is satisfied
that his consent was voluntarily given.

which this Court credits.  Even if Pelle lacked that
understanding, the case law does not confine consent to the sole
officer who obtained the consent.

In <u>United States v. White</u>, 617 F.2d 1131, 1134 (5th Cir.
1980), an FBI agent asked the defendant during an interview at
the FBI office for permission to search his vehicle.  The
defendant then read and signed a form consenting to the search.
The vehicle was not searched until two days later, and it was
searched by FBI agents other than those named in the consent
form.  At trial, certain items of evidence that had been seized
in the search were admitted into evidence, over objection.  In
holding that the defendant's motion to suppress the evidence
obtained from his motor vehicle was properly denied, the court
found that the defendant suffered no harm as a result of the
search being conducted by officers other than those listed on the
consent form.  <u>Id.</u>

In <u>United States v. Rubio</u>, 727 F.2d 786, 797 (9th Cir.
1983), the court held that a consent search may not be "validly
qualified by the number of officers allowed to search."  There,
the defendant moved to suppress a number of firearms seized from
his house, arguing that he only consented to have one officer
conduct the search.  In upholding the trial court's conclusion
that an "unqualified consent to search was given" and, thus, that
the defendant's suppression motion should be denied, the Ninth

7

Circuit held that "[o]nce consent has been obtained from one with authority to give it, any expectation of privacy has been lost." Id.; accord United States v. Betts, 16 F.3d 748, 755 (7th Cir. 1994) (same); Wildauer v. Frederick County, 993 F.2d 369, 371 (1993) (same) (citing Rubio, 727 F.2d at 797). See also Hoffman v. County of Delaware, 41 F. Supp. 2d 195, 214 (N.D.N.Y. 1999) ("[H]aving given consent to [one law enforcement officer], Hoffman no longer had any expectation of privacy and, accordingly, suffered no violation of his Fourth Amendment rights. The fact that [the second law enforcement officer] was a member of a different police department than [the first] or was acting in his position as Special Investigator for the County Department of Social Services . . . does not require a different result."), aff'd, 205 F.3d 1323 (2d Cir. 2000).

Similarly, in United States v. Perez, 37 F.3d 510, 515-16 (9th Cir. 1994), the court held that the scope of consent to search was not exceeded where officers utilized search techniques not explicitly authorized by the defendant. Specifically, in that case the defendant argued that the use of a narcotics dog in conducting an otherwise consensual search exceeded the scope of his consent. Therefore, the defendant argued, the fruits of the search conducted with the aid of the narcotics dog must be suppressed. The court rejected that argument, holding that the use of the narcotics dog did not make the search more intrusive

than the one to which the defendant consented and, thus, that the
search did not infringe any privacy interest in the property
authorized to be searched.  Id. at 516.

Taken together, these cases stand for the proposition that
where a defendant willingly consents to a search, that search may
not be invalidated solely because of how, or by whom, the search
is conducted.  Here, Defendant concedes that his consent was
freely given and that it was not procured through fraud or other
improper means.  In other words, he understood and agreed that a
law enforcement investigator would be searching the contents of
his personal computer for evidence of child pornography.

Moreover, there is nothing in the record suggesting that
Defendant's consent was induced upon a promise that only Jewusiak
would conduct the search.  Indeed, as the Court already noted,
Ms. Jewusiak testified that she informed Defendant, prior to his
executing the consent form, that the search would require the
assistance of a computer expert, which she was not.  As a result,
Pelle lost all expectation of privacy in the contents of his
computer hard drive once he authorized the search of that very
property.  Accordingly, the contents of that search should not be
suppressed solely because Investigator Jewusiak did not herself
perform the actual search.

That the search was eventually performed by an investigator
for a federal agency rather than the county prosecutor does not

require a different result.  See Hoffman, supra, 41 F. Supp. 2d at 214.  The county, according to Investigator Jewusiak, experienced delays in arranging for the inspection by its own forensic computer expert, and it first sought assistance from the New Jersey State Police.  When Pelle did not follow through by arranging to be present for the NJSP search, the county contacted Customs agents in the Department of Homeland Security to obtain their assistance in the search.  Since the distribution of child pornography is a federal crime, it was reasonable and appropriate for the local authorities to obtain such assistance in their investigation.  Because Pelle's consent to the search of his computer for evidence of child pornography could reasonably be understood to permit the county prosecutor to obtain assistance from another agency, "the Fourth Amendment provides no ground for requiring a more explicit authorization."  Florida v. Jimeno, supra, 500 U.S. at 252.  No case has been found confining consent to a single law enforcement agency, and Defendant advances no reason why this case should be the first.

B.   Withdrawal of Consent

       Defendant next argues that his statements to Amy Jewusiak on March 24 and March 26, 2004 amounted to an unequivocal expression of his desire not to have his computer searched, thereby effecting a withdrawal of his earlier consent.  For the following

10

reasons, the Court finds Pelle did not withdraw his consent to search.

The United States Supreme Court is yet to consider whether a defendant who has consented to a search may subsequently withdraw that consent.  The courts which have decided the issue, however, have unanimously answered that question in the affirmative, generally holding that any such withdrawal must be supported by unambiguous acts or unequivocal statements.  See United States v. Sanders, 424 F.3d 768, 774 (8th Cir. 2005) ("If equivocal, a defendant's attempt to withdraw consent is ineffective and police may reasonably continue their search pursuant to the initial grant of authority."); United States v. Gray, 369 F.3d 1024, 1026 (8th Cir. 2004) ("Withdrawal of consent need not be effectuated through particular 'magic words,' but an intent to withdraw consent must be made by unequivocal act or statement.") (citation omitted);; Mason v. Pulliam, 557 F.2d 426, 429 (5th Cir. 1977) (holding unilateral grant of consent limited by right to withdraw same); United States v. Miner, 484 F.2d 1075 (9th Cir. 1973) (finding withdrawal where prospective airline passenger balked at search of luggage by saying "No, it's personal"); United States v. Dichiarinte, 445 F.2d 126 (7th Cir. 1971) (holding withdrawal of consent where defendant exclaimed "The search is over.  I am calling off the search"); United States v. Bily, 406 F. Supp. 726 (E.D.Pa. 1975) (concluding

consent was withdrawn where defendant stated "That's enough.  I want you to stop"); <u>Burton v. United States</u>, 657 A.2d 741, 746-47 (D.C. App. 1994) ("[W]hen the basis for a warrantless search is consent, consent may be withdrawn any time prior to completion of the search . . . .").[6] "If indeed, however, such a withdrawal is possible, it is nowhere to be found on these facts." <u>United States v. Alfaro</u>, 935 F.2d 64, 67 (5th Cir. 1991).

Here, the Court holds that no reasonable person could conclude that Defendant Pelle's statements to Amy Jewusiak on March 24 and March 26, 2004, together with Pelle's subsequent failure to "get back to her," were clear expressions of his desire not to have his computer searched.  Defendant argues that there is evidence of Investigator Jewusiak's subjective belief that Defendant had withdrawn his consent; namely, the proffer by Maureen Majesky, a DYFS case worker who participated in the Pelle investigation, that Jewusiak stated that there was no "probable cause to search Robert's computer without his permission." (Majesky Memo, <u>quoted in</u> Def. Supp. Br. at 1.)

---

[6] Similarly, the Third Circuit held in, <u>United States v. Wilmore</u>, 57 Fed. App. 949, 953 (3d Cir. 2003), that "[a] consent that waives Fourth Amendment rights may be withdrawn by an unequivocal act or statement that clearly expressed the individual's desire not to be searched."  (Citing <u>Jimeno</u>, 500 U.S. at 252; <u>United States v. Kim</u>, 27 F.3d 947, 957 (3d Cir. 1994)).  That decision is unpublished, though, and this Court will not rely on its holding.

In the first instance, however, Jewusiak testified at the
suppression hearing that she did not believe Defendant had at any
time withdrawn his consent.  Indeed, Jewusiak testified that
during both telephone conversations with Defendant, Pelle stated
that he would "get back to her" as soon as he contacted his
attorney.  In any event, the Court does not believe that the
statement proffered, even if accurate, sheds light on the issue
of withdrawal.  Instead, it merely demonstrates Jewusiak's belief
that Pelle's consent to search was required because, absent
consent, there was insufficient probable cause to obtain a
warrant.  It does not mean that Jewusiak believed Pelle's consent
had been withdrawn.[7]

Finally, the internal policy of the New Jersey State Police,
requiring the presence of the person who consented to the search

---

[7] The remainder of Majesky's file entry reflects Jewusiak's
apprehension whether Pelle, now supposedly in contact with an
attorney, would continue to consent to the search.  Majesky wrote
of her contact with Jewusiak on March 26, 2004:  "She stated that
they do not have probable cause to search Robert's computer
without his permission.  He initially gave it, however, he has
now been in contact with a lawyer and Amy is unsure if he will
now give permission."  (Majesky Memo, quoted in Def. Supp. Br. at
1.)  No lawyer contacted Jewusiak, and whatever qualms she had
about the prospect of Pelle or his lawyer withdrawing consent or
demanding the return of his computer dissipated over time when
Pelle took no such action.  Jewusiak was unsure on March 26th
what Pelle would do.  By September, 2004, after not hearing from
him or any lawyer for months, Jewusiak could be confident that
Pelle's consent, voluntarily given on March 23rd, remained
unimpaired.  The Camden County Prosecutor's Office then enlisted
the aid of the federal customs authorities, who did not require
Pelle's presence to search.

while the search takes place, does not matter here.  It would have no bearing upon whether Defendant clearly expressed his desire that the search not be conducted; the Fourth Amendment contains no presumption that the individual consenting to the search will be present during the search, and the internal operating procedure is not engrafted onto Mr. Pelle's Fourth Amendment rights.  Moreover, the Camden County Prosecutor had no such internal policy, and the New Jersey State Police did not search the computer in any event.

In sum, the Court finds that Defendant's statements and his behavior were equivocal, and that they can not be reasonably understood as expressing a desire to withdraw consent to having his computer searched by law enforcement.  Accordingly, the Court holds that Defendant never withdrew the consent that he had previously given voluntarily.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion to suppress.  An appropriate Order will be entered.

**February 17, 2006**                    **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          U.S. District Judge