IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | HON. JEROME B. SIMANDLE |
| v. | Criminal No. 05-407 (JBS) |
| ROBERT G. PELLE, | **OPINION** |
| Defendant. | |

APPEARANCES:

CHRISTOPHER J. CHRISTIE
United States Attorney
By: Philip James Degnan
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
970 Broad Street
Suite 700
Newark, NJ 07102
Attorney for the United States of America

Robert N. Agre, Esq.
4 Kings Highway East
Haddonfield, NJ 08033
Attorney for Defendant Robert G. Pelle

The Law Offices of United Defense Group
By: Eric A. Chase, Esq.
4181 Sunswept Drive
Suite 100
Studio City, CA 91604
Seeking to Represent Robert G. Pelle

Criminal Defense Associates, A Professional Legal Corporation
By: Marie F. Alex, Esq.
Robert Nudelman, Esq.
20700 Ventura Boulevard
Suite 301
Woodland Hills, CA 91364
Attorneys for Confidential Witness ("CW")

**SIMANDLE, U.S. District Judge:**

In this criminal case, Defendant Robert G. Pelle seeks to substitute new counsel, United Defense Group of Studio City, California ("UDG"), to represent him, over the objection of the United States due to an alleged conflict of interest. Two UDG attorneys, Lorilee and Angelyn Gates, before joining UDG, previously represented "CW", a confidential witness who is expected to testify against Pelle at trial, when the Gateses were associated with the firm that continues to represent CW, namely, Criminal Defense Associates, of Woodland Hills, California. CW, through his current attorney, Marie F. Alex, Esquire, also objects to UDG's proposed entry into this case for Mr. Pelle. The issue for resolution is whether, under the circumstances presented in this case, the conflict which would preclude the Gates' from representing Pelle is imputed to the UDG law firm with which they are presently associated pursuant to Rule 1.10(c) of the New Jersey Rules of Professional Conduct ("RPC").

## I. FACTUAL BACKGROUND

On September 22, 2004, CW was arrested and he was detained upon a federal criminal complaint in the District of New Jersey, charged with conspiracy to transport a minor with intent to engage in sexual activity in violation of 18 U.S.C. § 2423(e). His initial appearance was convened on September 23, 2004, and a

detention hearing was convened on September 29, 2004. CW retained Criminal Defense Associates, a law firm consisting of eight attorneys. CW was represented at the detention hearing and at all subsequent times by Criminal Defense Associates, where CW's case was assigned to attorney Marie Alex for pretrial purposes. If his case went to trial, the assigned trial attorney would have been Angelyn Gates, according to Marie Alex and supervising attorney Robert Nudelman.[1] Due to Ms. Alex's unavailability, Lorilee Gates traveled to New Jersey for the September 29th detention hearing and spoke with her client, CW, for about 30 minutes in preparation for the hearing; Lorilee Gates appeared at the hearing and won CW's release on conditions of bail. According to her affidavit, Lorilee Gates had no further contact with CW after the detention hearing. (Declaration of Lorilee Gates, undated, February 2007.)[2] Since joining UDG, she has not participated in any way in the representation of Mr. Pelle. (Id. ¶ 10).

Angelyn Gates' contact with CW while a Criminal Defense Associates attorney probably included making telephone calls on his case, including a call to the prosecutors to notify them of

---

[1] CW's lawyers, Marie Alex and Robert Nudelman, participated in the hearing on this motion, and certain facts herein come from the representations they have made to the Court.

[2] Although captioned as an "Affidavit," the document is an unsworn declaration under penalty of perjury under 28 U.S.C. § 1746.

the firm's retention and to gather preliminary information regarding the status of the case. (Declaration of Angelyn Gates, February 5, 2007 at ¶¶ 3 & 4.) Angelyn Gates has no independent recollection of the details of any such calls in this matter, but states it is possible she talked with CW and has only a "vague recollection" of his matter. (Id. ¶ 1.) She has performed no services in connection with Mr. Pelle's case, is unaware of the details of it, and has not been given any information about it. (Id. ¶ 6.)

In late 2005, Angelyn Gates, Lorilee Gates, and a third attorney, Michael Bialys, Esquire, left the Criminal Defense Associates firm and joined UDG. Mr. Bialys is not known to have had any contact with CW's case.

In 2006, CW, represented by Ms. Alex, entered a plea of guilty to a one-count Information charging conspiracy to transport a minor in interstate commerce with the intent that the minor engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(e), for which he awaits sentencing. According to the colloquy at CW's Rule 11 hearing, Robert Pelle was his co-conspirator whereby Pelle agreed to transport a 12-year-old minor, to whom Pelle had access, from New Jersey to New York for purposes of unlawful sexual activity with CW, which then occurred in November 2003. Pelle is charged with the substantive offense under 18 U.S.C. § 2423(a) and aiding and abetting under 18 U.S.C.

§ 2, in Count Three of his Indictment, and CW is expected to testify as a material witness for the government against Mr. Pelle.

Mr. Pelle's proposed new attorney, Eric A. Chase, Esquire, of UDG, where he is a Senior Partner and Chief Counsel, has stated that he has had no discussions with Angelyn Gates or Lorilee Gates regarding the substance of their representation of CW. (Declaration of Eric A. Chase, undated, February 2007.) Mr. Chase assures the Court that neither Angelyn Gates nor Lorilee Gates will participate in any way in the representation of Mr. Pelle nor will they share in any portion of the fees paid by Mr. Pelle. (Id. ¶ 6.)

In January 2007, Mr. Pelle desired to change attorneys and retain UDG, with Eric Chase representing him. The Court was alerted to a possible conflict in a telephone conference with counsel, including Mr. Chase, on January 8, 2007. Mr. Chase gave written notice of the potential conflict on January 11, 2007. Counsel for CW, Marie Alex, Esquire, objected to UDG's retention on January 29, 2007. Ms. Alex rejected the suggestion in Mr. Chase's letter that his firm could represent Mr. Pelle so long as Lorilee and Angelyn Gates are screened from any participation. Ms. Alex wrote:

> [W]e will be strongly objecting to your firm's representation of Mr. Pelle due to Ms. Gates previous involvement in the [CW] case while employed with Criminal Defense

> Associates. [CW] is not merely a potential witness in the Robert Pelle matter. [CW] is a material witness in the Pelle case. At Robert Pelle's federal trial, Mr. Pelle's attorney will be vigorously cross-examining [CW] who will be offering very damning testimony against Mr. Pelle. Because of Ms. Gates' involvement in this case, which involved a lengthy one-on-one interview and confidential communication with [CW] early into [CW's] arrest while he was in federal custody, we do not believe there is a wall thick enough to shield you or your firm from the contact regardless of [the intent to screen the other attorneys].

Letter of Marie Alex, dated January 29, 2007. On the next day, January 30, 2007, the United States Attorney's Office objected to Pelle's retention of UDG, arguing that such retention would violate New Jersey RPC 1.10(c). (Letter of AUSA Philip Degnan, January 30, 2007.)

At a status conference on January 31, 2007, a briefing schedule and argument date were set, and oral arguments were heard on February 13, 2007, in which Mr. Chase, Ms. Alex, Mr. Nudelman and AUSA Degnan participated. Mr. Pelle remains represented by his previously retained attorney, Robert Agre, Esquire, who also participated, until such time as substitution of counsel is approved. The previous trial date of January 8, 2007 was adjourned to March 12, 2007 to accommodate Mr. Pelle's request to retain substitute counsel.

## II. DISCUSSION OF LAW

As counsel seeking to appear in this Court, the UDG law firm is governed by the New Jersey Rules of Professional Conduct ("RPC"), as applied through L. Civ. R. 103.1(a).[3] Substitution of criminal defense counsel where the trial date has been set, as in this case, may occur only with leave of court, pursuant to L. Civ. R. 102.1. Whether UDG is disqualified by an imputed conflict is determined by reference to RPC 1.10, which provides in relevant part as follows:

> (a) When lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by RPC 1.7 or RPC 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.
>
> * * *
>
> (c) When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in

---

[3] L. Civ. R. 103.1(a) of this Court provides:

> (a) The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by Federal statute, regulation, court rule or decision of law.

> which that lawyer is disqualified under RPC 1.9 unless:
>
> > (1) the matter does not involve a proceeding in which the personally disqualified lawyer had primary responsibility;
> >
> > (2) the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
> >
> > (3) written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule
>
> (d) A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in RPC 1.7.
>
> (e) The disqualification of lawyers associated in a firm with former or current government lawyers is governed by RPC 1.11.
>
> (f) Any law firm that enters a screening arrangement, as provided by this Rule, shall establish appropriate written procedures to insure that: (1) all attorneys and other personnel in the law firm screen the personally disqualified attorney from any participation in the matter, (2) the screened attorney acknowledges the obligation to remain screened and takes action to insure the same, and (3) the screened attorney is apportioned no part of the fee therefrom.

The threshold question is thus whether Angelyn Gates and Lorilee Gates would themselves be precluded from representing Mr. Pelle under RPC 1.9(a) & (b), which governs duties to former clients. RPC 1.9(a) & (b) states:

> (a) A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client,
>
> (1) whose interests are materially adverse to that person; and
>
> (2) about whom the lawyer, while at the former firm, had personally acquired information protected by RPC 1.6 and RPC 1.9(c) that is material to the matter unless the former client gives informed consent, confirmed in writing.
>
> Notwithstanding the other provisions of this paragraph, neither consent shall be sought from the client nor screening pursuant to RPC 1.10 permitted in any matter in which the attorney had sole or primary responsibility for the matter in the previous firm.

It is clear that attorneys Lorilee Gates and Angelyn Gates are both disqualified from representing Pelle under both RPC 1.9(a) & 1.9(b). Lorilee Gates traveled from California to New Jersey to represent CW at his detention hearing and spoke with him at some length confidentially regarding his criminal charges and detention, and that CW's charge is the same matter as contained in County Three now pending against Pelle. Angelyn Gates also performed professional services for CW, including at

least one call to the Assistant U.S. Attorney Degnan about CW's case; her services thus amount to having "represented a client" for purposes of disqualification in this same or similar matter. Their representation of CW was in the same or similar matter as Pelle's case, and their former client, CW, now occupies a position adverse to Pelle because CW is cooperating with the government in Pelle's prosecution.

Under RPC 1.10(c), UDG is disqualified from representing Pelle unless the three-pronged exception to imputed disqualification is met. Namely, UDG must show that the disqualified attorneys -- Angelyn and Lorilee Gates -- did not have "primary responsibility" in this matter, and that they are timely and effectively screened from participating in UDG's representation of Pelle and from receiving any portion of the fee therefrom, and that prompt written notice is given to the affected former client, CW. See RPC 1.10(c)(1), (2), (3).

The Court applies this test in the context of Mr. Pelle having a constitutional right to representation by counsel of his own choosing, which is not absolute. See, e.g. Wheat v. United States, 486 U.S. 153, 189 (1988) ("The Sixth Amendment right to choose one's own counsel is circumscribed [and a defendant may not] insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party....").

In this case, Mr. Pelle's choice of UDG is a choice of a firm that employs three attorneys who left the eight-member Criminal Defense Associates firm that represented and continues to represent his alleged criminal co-conspirator, CW, who will be a witness against him. Two of those attorneys had a direct and meaningful role in representing CW.

The term "primary responsibility" in RPC 1.10(c) is not self-defining. It includes the attorney who has sole responsibility or principal responsibility, and it would not connote an attorney whose contact with the client's file was incidental or technical. The purpose of the ethical requirement animates its meaning. The undoubted purpose is to assure that the conflict of an attorney who had substantial access to the former client's confidences and legal strategies will be imputed to the attorney's new firm, which may not represent an adverse interest in the same or similar matter. At the same time, the Rule limits disqualification to situations that truly require them. See Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 205 (1988) (interpreting NJ conflicts rule requires court to balance need to maintain highest standards of professionalism against client's right to choose counsel). The ethical duty to protect the confidences and work product owed to the former client trumps the choice of the adversary to retain the new firm where the disqualified attorney was a primary representative.

The New Jersey Supreme Court has recognized, in similar circumstances, the "fundamental importance of the attorney's obligation to preserve the client's confidences." Id. at 217. The Court found that disqualification of the side-switching attorney's law firm was not required where the attorney performed no work on the relevant matter and the motion to disqualify came on the eve of trial after years of work by the law firm. Where the attorney had done no substantive work on the relevant matter and had acquired no confidential information about the former client, disqualification would not be imparted to his new firm under RPC 1.10(c). Id. at 219-20. The Court indicated that disqualification would be imputed to the new firm if counsel had more substantial involvement with the client's case and confidences, stating:

> We cannot conceive of any situation in which the side-switching attorney or his new firm would be permitted to continue representation if, unlike the situation before us, the attorney had in fact actually represented the former client or had acquired confidential information concerning that client's affairs.

Id. at 220. Thus, a heightened precaution is necessitated, militating in favor of imputing the conflict to the new firm, where the disqualified attorneys actually obtained confidential information regarding the former client in the same or similar matter. See Reardon v. Marlayne, Inc., 84 N.J. 460, 473 (1980)

(finding that access to client confidences gives rise to presumption that such confidences were obtained).

More recently, two attorneys' personal disqualifications were imputed to their new firm where they were assumed to have had primary responsibility in In re: Galapentin Patent Litigation, 407 F. Supp. 607 (D.N.J. 2005). In that case, the two attorneys "established and executed defense strategy; collected both testimonial and documentary evidence from [the former corporate client's] employees and files; and analyzed legal issues in preparation for summary judgment." Id. at 609.

In the present case, CW's defense by Criminal Defense Associates began in September of 2004. Lorilee Gates traveled to New Jersey and interviewed CW and obtained confidential information and developed strategy for successfully representing him at his detention hearing. As in State v. Sanders, 260 N.J. Super. 491, 496, 616 A.2d 1345, 1347 (App. Div. 1992), such representation is significant because "the constitutional right to bail often sets the stage for significant attorney-client consultations." According to Criminal Defense Associates' supervising attorney, Robert Nudelman, CW's representation was a team approach, with Angelyn Gates assigned as the trial attorney, Marie Alex assigned for pretrial purposes, Lorilee Gates conducting the initial client interviews, and Angelyn Gates also gathering background information by telephone. Further, Marie

Alex briefed Angelyn Gates once or twice about CW's defense efforts, until Angelyn Gates, Lorilee Gates, and Michael Bialys left the firm a year later in late 2005 to join UDG. Responsibility for CW's representation was divided by function within the small Criminal Defense Associates firm. The substantial roles performed by Angelyn Gates and Lorilee Gates, including their exposure to confidential information and strategies of defending CW, amount to primary responsibility within the intent of RPC 1.10(c)(1). The Court also cannot overlook the cumulative weight of the collective responsibilities of the two attorneys Gates in representing CW, and the fact that actual confidential and tactical information was imparted to them during their time as his attorneys at Criminal Defense Associates. Further, Mr. Pelle, by only recently selecting UDG about 27 months after CW was represented by two of its attorneys in the very same criminal matter, has not relied upon UDG representing him, as he remains represented by Mr. Agre until substitution of new counsel occurs.

If these conflicts were not imputed to the new firm, the purposes of RPC 1.10(c) would be frustrated. Several attorneys who provided significant representation to CW continue to owe their fidelity to him, yet another attorney in their same small firm would have the task of confronting CW when he testifies in Pelle's case. CW would legitimately wonder whether information

developed in confidence by those attorneys could come back at him when he tries to fulfill his cooperation by testifying. These concerns for protecting client confidences are intensely practical, based on the particular facts presented in this case, and are not metaphysical. Cf. Fuller v. Diesslin, 868 F.2d 604 (3d Cir.)(rejection of counsel choice is impermissibly arbitrary unless based on actual effects on judicial administration in case at hand), cert. denied, 493 U.S. 873 (1989). RPC 1.10(c) strikes the balance of protecting CW's continuing interest in confidentiality and strategy shared with counsel who played substantial and meaningful roles in defending him previously in the same matter, by imputing their disqualification to their new firm.

Further, Constitutional concerns, not discussed in the parties' submissions, do not alter the outcome.

> The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend VI. One element of this basic guarantee is the right to counsel of choice. Powell v. Alabama, 287 U.S. 45, 53, 53 S. Ct. 55, 58, 77 L. Ed. 158 (1932). The right to counsel of choice, however, is not absolute. Wheat v. United States, 486 U.S. 153, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). Thus, where "considerations of judicial administration" supervene, the presumption in favor of counsel of choice is rebutted and the right must give way. Fuller[, 868 F.2d at 607 n.3].

United States v. Voigt, 89 F.3d 1050, 1074 (3d Cir. 1996).

"[T]he only concerns the court may consider in weighing whether to grant the defendant's request for counsel of choice are the defendant's right to counsel of choice and the fair and proper administration of justice." Fuller, 868 F.2d at 610. "Clearly, the potential for serious conflicts is a consideration of judicial administration that can outweigh a defendant's right to counsel of choice." Voigt, 89 F.3d at 1075 (citing Wheat, 486 U.S. at 163; United States v. Moscony, 927 F.2d 742, 750 (3d Cir.), cert. denied, 501 U.S. 1211 (1991); Davis v. Stamler, 650 F.2d 477, 480 (3d Cir. 1981)). The presumption in favor of a defendant's right to counsel of his choice may be overcome by a factual determination that there is a serious potential for conflict. Id. at 1076.

Here, the Court is faced with more than the potential for conflict -- there is an actual conflict, as there is no doubt that CW will testify against the defendant and that CW was previously represented by attorneys now affiliated with UDG in the same matter. The conflicted attorneys were the primary attorneys representing CW at that time.[4]

---

[4] Thus, RPC 1.10 rejects mere screening as a potential remedy for the conflict. On balance, the imputation of the conflict to the entire firm does not appear to be unfair or unjust to Defendant in this case. UDG is a small firm of no more than ten attorneys of which Angelyn Gates is the managing partner. In that situation, the prospect of accidental exposure to the Pelle matter is real, despite any efforts to screen her or Lorilee Gates, a Senior Attorney at this small firm, from the case.

Meanwhile, Defendant Pelle has been represented vigorously by counsel of his own choice, Mr. Agre, since the inception of this case two years ago. While Mr. Pelle is free to obtain new counsel and to seek leave of court for substitution, he is not free to choose new counsel who are impaired by the conflict of prior representation of the government's material witness against him. Furthermore, this case does not present a situation where Defendant Pelle has somehow relied upon Mr. Chase representing him, nor to the Court's knowledge has Mr. Chase performed substantive legal work for Pelle; this is a matter of substitution of new counsel, rather than of disqualification of existing counsel.[5]

The Court notes, also, that the Sixth Amendment protects CW's right to the effective assistance of unconflicted counsel, see Holloway v. Arkansas, 435 U.S. 475, 489-90 (1977), which he certainly has not waived, as well as both the appearance and

[5] The substitution of new counsel in this case, which has been set for trial, requires leave of court under Local Civil Rule 102.1, which has been expressly incorporated into the Local Criminal Rules by Local Criminal Rule 1.1. The administration of justice is implicated in an eve-of-trial substitution as recognized by the Local Rules. Generally, the Court's discretion to deny substitution is broader as trial nears. In the present case, however, it is not the lateness of Defendant's request to bring new counsel into this case that compels denying this application, as the Court recognizes that it would in all likelihood adjourn the trial date to accommodate the needs of Defendant and new counsel in this single-defendant trial. Indeed, the Court remains prepared to do so if suitable new counsel is retained.

reality of preservation of his confidences shared with his attorneys. On balance, then, the record indicates that the imputed conflict outweighs the defendant's right to choose UDG to represent him.

If substitution of UDG as counsel into this case occurred, disqualification would be required because of the conflict created by these attorneys under RPC 1.10(c). Therefore, the request for substitution of Eric Chase, Esquire, of UDG, as new counsel must be denied.

The appropriate Order denying Defendant's application to substitute new counsel was entered on February 16, 2007.

**February 28, 2007**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
U.S. District Judge